IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ROBERT CRAWFORD and JOSEPH SHORETTE, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | CASE NO. 3:10-00628 JUDGE CAMPBELL/KNOWLES |
| PACE INDUSTRY UNION-MANAGEMENT PENSION FUND (PIUMPF), | ) ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon Defendant's "Motion to Dismiss Count II of Amended ERISA Complaint." Docket No. 61. Defendant has filed a supporting Memorandum of Law. Docket No. 62. Plaintiffs have filed a Response in opposition to the Motion. Docket No. 67. Defendant has filed a Reply to Plaintiffs' Response. Docket No. 75.

This is an ERISA case, brought by two Plaintiffs who were covered under Defendant's Retirement Plan. Both Plaintiffs allege, essentially, that they retired based upon representations made by Defendant that they were eligible for certain pension benefits. Defendant paid those benefits for approximately 3 years, but then rescinded them.

Plaintiffs, therefore, filed the instant action, raising two Counts. Docket No. 50. In Count I, Plaintiffs claimed that Defendant had breached the ERISA Plan Provisions at issue by rescinding their retirement benefits. In Count II, Plaintiffs raised a claim for "Equitable estoppel

under the federal common law of ERISA." Docket No. 50, p. 16. In that Count, Plaintiffs state in part:

> In the event that the Plaintiffs cannot prevail with respect to their claim for benefits under 29 U.S.C. § 1132(a)(1)(B) in accordance with the terms of the PIUMPF Pension Plan, the Plan must be found to be equitably estopped from rescinding the Plaintiffs' pension benefits over 3 years after issuing a written document awarding them through a grant of Past Service Credit at Great Northern Paper Company and approximately six years after promising their availability in writing.

*Id.*, p. 17.

Plaintiffs further state:

> PIUMPF specifically informed the Plaintiffs' Union Representatives orally and in writing and through them informed the Plaintiffs that Past Service Credit would be granted for service in the same industry Lincoln Pulp & Paper and its Union employees worked in.

*Id.*, p. 17-18.

Both Plaintiffs also aver that they "justifiably believed" that they were eligible for the pension benefits they were initially awarded.

Plaintiffs have previously filed a Motion for Summary Judgment with regard to Count I of their Complaint. Docket No. 68. The undersigned has submitted a Report and Recommendation recommending that that Motion be DENIED, concluding that under the terms of the Pension Plan, Plaintiffs were not entitled to the pension benefits that they were initially awarded Docket No. 91.

The instant Motion is filed pursuant to Fed. R. Civ. P. 12(b)(6), and the Court accepts the allegations of Plaintiffs' Amended Complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *In re Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir. 1997). Defendant basically

2

argues that an equitable estoppel theory cannot be applied against a pension plan to vary the terms of unambiguous plan provisions. Docket No. 62, p. 7, *citing Sprague v. General Motors Corp.,* 133 F.3d 388, 404 (6th Cir. 1998) (en banc). The *Sprague* Court stated in relevant part as follows:

> We have held that equitable estoppel may be a viable theory in ERISA cases, *at least in regard to welfare plans. Armistead* [v. Vernitron Corp*.,* 944 F.2d 1287] at 1298 [6th Cir. 1991]. The elements of an equitable estoppel claim, as announced by the *Armistead* panel are as follows: (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment. *Id*. at 1298.
>
> Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions . . . . There are at least two reasons for this. First, as we have seen, estoppel requires reasonable or justifiable reliance by the party asserting the estoppel. That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party. Second, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.

133 F.3d at 403-04 (footnote and citations omitted, emphasis added).

As the *Sprague* Court also stated, ERISA's requirement that every plan have a Plan of Benefits and a Summary Plan Description ensures that "every employee may, on examining the plan documents, determine exactly what its rights and obligations are under the plan." *Id.* at 402 *quoting Curtiss-Wright Corp., v. Schoonejongen,* 514 U.S. 73, 78 (1995). That requirement

3

"lends predictability and certainty to employee benefit plans." Additionally, "Congress intended that plan documents and SPD's exclusively govern an employer's obligations under ERISA plans." *Id.*

Plaintiffs' Response is rather difficult to follow. The Court notes that Plaintiffs' Response mentions only two cases, one of which is *Sprague*. Plaintiffs state as follows:

> The Defendant's argument that the Plaintiffs are trying to use *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 440 (6th Cir. 2010) to overturn *Sprague* . . . is further unsupported nonsense. The Plaintiffs simply argue that if the Plan does not unambiguously support their position it is at least ambiguous. They are not in any way attempting to argue that estoppel in their particular case should vary the terms of unambiguous plan provisions.

Docket No. 67, p. 14-15.

Plaintiffs apparently are focusing on the statement in *Sprague* that principles of estoppel cannot be applied to vary the terms of unambiguous plan documents, but that estoppel can only be invoked in the context of ambiguous plan provisions.[1] 133 F.3d at 404 (citations omitted).

It is crucial to note, however, that *Sprague* involved a welfare plan, not a pension plan. Subsequent Sixth Circuit cases have indicated that *Sprague's* recognition that equitable estoppel may be a viable theory in ERISA cases is limited only to ERISA cases involving welfare plans. *See Shepherd v. Dana Corp.,* 2000 WL 191822 at *2 (6th Cir.) ("[W]e have held that equitable estoppel may be a viable theory in ERISA cases involving welfare plans . . . ."); *Bielkie v. General Motors Corp.,* 1989 WL 644336 at *2 (6th Cir) ("*Sprague* did recognize the viability of estoppel claims, but its holding is limited to welfare plans.").

---

[1] In view of Plaintiffs' stated position, it is unnecessary for the Court to consider *Bloemker*.

In fact, as discussed above, the *Sprague* Court specifically referred to equitable estoppel's being a viable theory in ERISA cases, "at least in regard to welfare plans." 133 F.3d at 403. For this proposition, the *Sprague* Court cited *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991). *Armistead* makes it very clear that, while equitable estoppel may be a viable theory in ERISA cases involving welfare plans, it is not a viable theory in ERISA cases regarding pension benefits.

The *Armistead* Court was concerned with a welfare benefits plan under ERISA, not a pension benefit plan under ERISA. The *Armistead* Court stated in relevant part as follows:

> ERISA divides benefit plans into two classes: "Welfare benefit plans" and Pension plans." *See* 29 U.S.C. §§ 1002(1) & (2)(A). The group insurance plan [at issue] is a welfare benefits [plan].

944 F.2d at 1297 (citations omitted).

The *Armistead* Court, after setting forth the five elements of equitable estoppel as quoted in *Sprague* above, stated in relevant part:

> [Defendant's] second argument against being estopped from denying insurance benefits is that ERISA's requirement that a welfare plan be in writing precludes the application of equitable estoppel in ERISA cases.
>
> . . .
>
> When a party is estopped from asserting a right in a written plan, the plan as enforced is not the same as the plan as written. For this reason, ERISA would seem to preclude the application of equitable estoppel to disputes over benefit plans under the statute.
>
> This reasoning applies primarily to cases involving pension plans and is much less cogent when welfare benefit plans are at issue. The reason is that pension benefits are typically paid out of funds to which both employers and employee contribute. Contributions and pay-outs are determined by actuarial assumptions reflected in the terms of the plan. If the effective terms of the plan may be

altered by transactions between officers of the plan and individual plan participants or discreet groups of them, the rights and legitimate expectations of third parties to retirement income may be prejudiced.

944 F.2d at 1299-1300 (emphasis added).

The *Armistead* Court then quoted the following key language from *Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir. 1990):

> The reason ordinarily cited for [courts' reluctance to apply equitable estoppel to ERISA cases] is a concern for the actuarial soundness of the ERISA plan. There are two types of ERISA plans: pension plans, which are funded and have strict vesting and accrual requirements; and welfare plans such as the one involved in this case, which have no such requirements. In the case of an unfunded welfare plan, there is no particular fund that is depleted by paying benefits. Thus, there is no need for concern about the plan's actuarial soundness.
>
> *[It has been noted that where] estoppel is disallowed, the pension plan involved is ordinarily a multi-employer plan*. S. Bruce Pension Claims: Rights and Obligations, 404 (1998). The reason for reluctance in such cases is the fact that the plan has multiple fiduciaries with control over a common fund. To allow one employer to bind the fund to pay benefits outside the strict terms of the [p]lan would be to make all the employers pay for one employer's misrepresentations, and to the extent that such payments damage the actuarial soundness of the [p]lan, it hurts all the employees as well.

934 F.2d at 1300 (emphasis added, first brackets added).

Thus, it appears reasonably clear that *Armistead, Sprague, Shepherd,* and *Bielkie* all indicate that equitable estoppel is not a viable ERISA theory in cases involving pension plans, particularly multi-employer pension plans. As the Court discussed in its previous Report and Recommendation, the Defendant Pension Fund is a multi-employer benefit plan. Docket No. 91, p. 4.

6

Even if the foregoing analysis is incorrect, according to *Sprague*, estoppel can be invoked only in the context of ambiguous plan provisions, a proposition with which Plaintiffs agree. Docket No. 67, p. 14-15. But Plaintiffs do not explain how or why any of the Plan provisions at issue are ambiguous.[2] Moreover, Plaintiffs have set forth no facts in their Amended ERISA Complaint that would support an argument that the language of the Plan is ambiguous. The Sixth Circuit has stated:

> This Court has held that although equitable estoppel may be a viable theory in ERISA cases, "[p]rinciples of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." [citing *Sprague*] *Consequently, a claimant must plead plan ambiguity in this Circuit to state a claim for estoppel relative to an ERISA claim for benefits*.

*Putney v. Medical Mutual of Ohio,* 2004 WL 2203838 at *3 (6th Cir.)(emphasis added).

Plaintiffs' Amended Complaint contains only the following conclusory allegation:

> 66. In the event the terms of the PIUMPF Pension Plan do not unambiguously favor the Plaintiffs' claim as set forth in Count I, they are certainly ambiguous as reflected in PIUMPF's initial grant of the Plaintiffs' pensions and then the confused recision of those same pensions.

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937, L. Ed. 2d 868 (2009), the Supreme Court stated in part as follows:

> [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not

---

[2] In the previously-submitted Report and Recommendation, the undersigned did not find any of the Plan's provisions to be ambiguous.

7

>     unlock the doors of discovery for plaintiff armed with nothing
>     more than conclusions.

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

Thus, the Court does not have to accept Plaintiffs' legal conclusion, unsupported by facts, that the terms of the Plan are ambiguous.

Finally, the Court notes that Plaintiffs' counsel has made a number of disparaging remarks concerning Defendant's counsel in his Response. For example, Plaintiffs have stated:

> The Defendant's position is either dishonest or plagued by an
> inability to understand the English language.

Docket No. 67, p. 2.

> The Defendant's implication . . . is sheer nonsense.

Docket No. 67, p. 3.

> The Defendant's invocation of contested fact simply testifies to the
> complete failure of its attorneys to understand what can
> legitimately be used as the basis for a motion to dismiss. More
> importantly, neither the Defendant nor its attorneys seem to be able
> to competently understand the English language in which the Plan
> is written; either that or their mischaracterization of the Plaintiffs
> position is intentional."

*Id*.

> For the above reasons, the Defendant's motion to dismiss Count II
> of the Plaintiffs' Amended Complaint is not only a motion which
> should be denied based on the falsity of its factual representations,
> but a motion which also should be labeled ludicrous and quite
> possibly deserving of sanction."

Docket No. 67, p. 17.

Plaintiffs' counsel, who signed the Response, is an attorney in Bar Harbor, Maine. Perhaps the practice is different in Maine, but this Court considers the above personal attacks on Defendant's counsel to be completely unprofessional, and the Court views such tactics with great

disfavor.  Such tactics do not give Plaintiffs' counsel any advantage in this Court, and they serve only to distract this Court's attention from whatever good or reasonable arguments counsel may advance.  Furthermore, if Plaintiffs' counsel believes that factual representations in Defendant's Motion are false, he has options under the Federal Rules of Civil Procedure and federal law to address that situation.  Making veiled suggestions as to falsity and sanctions, without actually pointing to any false factual representations, however, is not one of those options.

For the foregoing reasons, Defendant's "Motion to Dismiss Count II of Amended ERISA Complaint" (Docket No. 61) should be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

 _____
 E. Clifton Knowles
 United States Magistrate Judge