IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERT CRAWFORD and JOSEPH )
SHORETTE, )
 )
          Plaintiffs, )
 )
vs. )   CASE NO. 3:10-00628
 )   JUDGE SHARP/KNOWLES
 )
PACE INDUSTRY UNION- )
MANAGEMENT PENSION FUND )
(PIUMPF), )
 )
          Defendant. )

## REPORT AND RECOMMENDATION

This matter is before the Court upon Defendant's "Motion for Summary Judgment." Docket No. 94. The Motion seeks summary judgment with respect to Count I of Plaintiffs' Amended Complaint and as to Defendant's First and Second Counterclaims. Defendant has submitted a supporting Memorandum of Law (Docket No. 96), a Statement of Undisputed Material Facts, and the Declaration of Maria Wieck (Docket No. 97). Plaintiffs have filed a "Reply Memorandum" opposing the Motion (Docket No. 103), which will be referred to as a "Response"), and a Response to Defendant's Statement of Uncontested Material Facts (Docket No. 104). Defendant has filed a "Reply" (Docket No. 110), and a "Reply Statement of Uncontested Material Facts" (Docket No. 111).

This is an ERISA case, brought by two Plaintiffs who were covered under Defendant's Retirement Plan. Both Plaintiffs allege, essentially, that they retired based upon representations

made by Defendant that they were eligible for certain pension benefits. Defendant paid those benefits for approximately 3 years, but then rescinded them.

Plaintiffs, therefore, filed the instant action, raising two Counts. Docket No. 50. In Count I, Plaintiffs claim that Defendant breached the ERISA plan provisions at issue by rescinding their retirement benefits. In Count II, Plaintiffs raised a claim for "Equitable estoppel under the federal common law of ERISA." Docket No. 50, p. 16. Defendant thereafter filed Counterclaims against Plaintiffs, seeking to recover the benefits that, according to Defendant, were erroneously paid to Plaintiffs, plus interest. Docket No. 63, p. 8-10.

The undersigned has previously submitted a Report and Recommendation recommending that an earlier Motion for Summary Judgment with regard to Count I of the Amended Complaint, filed by Plaintiffs, be denied. Docket No. 91. In that Report and Recommendation, the undersigned concluded in part that there was no genuine issue as to material fact, but that Plaintiffs were not entitled to a judgment as a matter of law.[1] *Id*., p. 19.

## I. Count I

The instant Motion, as it pertains to Count I, is essentially the "flip side" of Plaintiffs' Motion for Summary Judgment. Defendant argues that there is no genuine issue as to any material fact, and that it is entitled to a judgment as a matter of law.

---

[1] Plaintiffs have sought review of that Report and Recommendation (Docket Nos. 98, 99), and that review is pending before Judge Sharp.

The Court also notes that Defendant previously filed a Motion to Dismiss Count II of the Amended Complaint. Docket No. 61. The undersigned has also submitted a Report and Recommendation recommending that that Motion be granted. Docket No. 92. Plaintiff has sought review of that Report and Recommendation (Docket Nos. 98, 99), and that review is pending before Judge Sharp as well.

In the previous Report and Recommendation, the undersigned analyzed the relevant plan provisions and undisputed facts, and concluded that Plaintiffs were not entitled to retirement benefits under the plain language of the Plan. The Court's prior conclusions dictate the result here. Plaintiffs are not entitled to benefits under the Plan – either future benefits or past benefits that were erroneously paid to them. Plaintiffs, however, raise a number of arguments in opposing the instant Motion that the Court will address.

Plaintiffs argue, "The single question presented by Count I is whether or not the Plaintiffs are entitled to an award of Past Service Credit under Article III, Section 1(b)(4) in the Plan document section effective for determining the rights of workers retiring after January 1, 2002." Docket No. 103, p. 1. Article III, Section 1(b)(4) states as follows:

> *If an employee cannot meet the foregoing tests*, he may qualify for "Past Service under the Plan rules in effect on February 27, 1980 if he was employed in Covered Employment on February 28, 1980, or if on February 28, 1980 he was employed by an Employer in non-Covered Employment and *had then met* the requirements of Article III, Section 6 hereof.

Docket No. 54-1, p. 204 (emphasis added).

Plaintiffs first argue that the issue was not "raised in the initial termination notices sent to the Plaintiffs," and that Defendant "never addressed that issue in the Plaintiffs' administrative appeal." Docket No. 103, p. 1. But Article III, Section 1(b)(4) is essentially an "exception" to the "foregoing tests." Defendant advised Plaintiffs during the administrative review that they had not met the "foregoing tests." At some point, Plaintiffs began to argue that, even if they had not met the foregoing tests, they had met the "exception"provisions of Article III, Section 1(b)(4). Thus, until Plaintiffs raised the "exception," it is not surprising that Defendant did not discuss it.

In any event, it is quite clear that it is inapplicable. As the Court concluded in the previous Report and Recommendation, the words "had then met" refer to February 28, 1980, and it is undisputed that neither Plaintiff had met the requirements of Article III, Section 6 on February 28, 1980. Plaintiffs state, "It is also not contested that they had not on February 28, 1980, met the requirements of Article III, Section 6." Docket No. 103, p. 8, n.6.

Plaintiffs further argue:

> The Plaintiffs and Defendant agree that Robert Crawford had 30 years of credit based on his tenure at Great Northern Paper Company while Joseph had approximately 27 years of Past Service Credit based on his tenure at Great Northern without in each case any breaks in service that would have caused them to forfeit credit.

Docket No. 103, p. 4.

As the undersigned discussed in the previous Report and Recommendation, those statements are simply not correct, at least based upon the plain language of the Plan.

Plaintiffs reference an "important back story" in order to discuss negotiations that occurred in 2004 between Plaintiffs' employer and the Union to which Plaintiffs belonged. Plaintiffs attempt to vary the terms of the Plan by reference to letters Defendant may have sent to that Union explaining past and future service programs, which is impermissible. Additionally, much of this discussion appears to be based upon mere speculation, and much of it is not cited to anything in the record.

Plaintiffs argue that the language "had then met" is not "inflexibly bound to" February 28, 1980, and no later time. Plaintiffs make a convoluted argument that interpreting the provision as the Court did would mean that the provision "could only apply to employees who left Covered Employment and retired by February 28, 1980. . . ." Docket No. 103, p. 8.

Defendant has explained at least twice why Plaintiffs' arguments are incorrect. Docket Nos. 80, p. 9-11; 102, p. 7-8. Moreover, Plaintiffs' interpretation would essentially require that Article III, Section 1(b)(4) be read out of the Plan Document.

Plaintiff also argues:

> The Defendant's position is also inconsistent with the Plan's break in service rules – Article III, Section 4. The break in service rules are too complicated to fit a one-size-fits-all readily accessible summary. However, they truly are relevant to the reasonableness of interpreting the Plan because the Defendant's reading posits an employee already eligible for Past Service [and retirement invested] on February 28, 1980, but on that date is no longer in Covered Employment. To be subject to a pension plan effective for employees retiring 22 years or more after February 28, 1980 assumes any credit they had on February 28, 1980 has not been erased by a break in service. Whether there is or is not a break in service in any individual case depends on specific facts about that case. Important to note, however, is the effect of a permanent break in service. Article III, Section 4(d) reads:
>
>> If a person incurs a permanent break in service under this Article III, Section 4:
>>
>> (i) his previous pension credits in years of vesting service are cancelled, and
>>
>> (ii) he is no longer a participant and must satisfy the participation requirements of Article II.
>
> That provision is important because looking back 22 years means that almost certainly anyone who has left Covered Employment by February 28, 1980 would have incurred a permanent break in service unless they went back into Covered Employment in a timely enough fashion to justify the individual components of the break in service provisions. There may be no such people in existence. I do sympathize with the Magistrate Judge's complaint that the break in service is hard to understand. So are many other

5

provisions in the Plan. But it is possible.[2]

Docket No. 103, p. 11-12 (footnote added).

As best the Court can understand, however, Plaintiffs have never made any argument that they are entitled to benefits under the "break in service rules." Plaintiffs have never specifically argued that the "break in service rules" apply to them or how they might apply to them. Insofar as the record shows, Plaintiffs did not leave Covered Employment by February 28, 1980.

Plaintiffs make an argument with regard to a Summary Plan Description page that Plaintiffs state "is apparently intended to recite the Plan provisions applicable to [Plaintiffs]." Docket No. 103, p. 13. Once again, as Defendant correctly notes, statements in a Summary Plan Description cannot form the basis of a claim for benefits under § 502(a)(1)(B), nor can they be used to alter the terms of the Plan.

Plaintiffs discuss amendment No. 3 to the Pension Plan, which apparently was adopted by the Board of Trustees on November 16, 2004. Docket No. 103, p. 14. Plaintiffs state:

> It should be noted that the pre-amendment Plan provision providing for Past Service Credit for employees "in light job classifications at plant locations" is consistent with an award of Past Service Credit for the Plaintiffs' employment with Great Northern Paper Company, and with the Defendant's earlier

---

[2] While the undersigned appreciates the solicitude of Plaintiffs' counsel, the undersigned did not complain "that the break in service is hard to understand." What the undersigned said was:
> With all respect, the Court finds it difficult to understand Plaintiffs' Reply. . . . Plaintiff next discusses the Plan's break in service rules . . . . Again, the Court simply does not understand that argument or how it relates to the Plan at issue.

Docket No. 91, p. 14.

6

interpretation of its Plan provisions.

Docket No. 103, p. 15.

Once again, the Court simply does not understand this argument. Plaintiffs appear to be saying that the Plan, before it was amended, would have been consistent with an award of Past Service Credit for Plaintiffs' prior employment. What that has to do with the current Plan remains a mystery.

Plaintiffs also seek to imply that the Court should not apply the arbitrary and capricious standard of review in this action, making vague references to an idea that "entitlement to deference must be tempered and perhaps denied." Docket No. 103, p. 16. The only case authority cited for this proposition is *Nichols v. Prudential Ins. Co. of America*, 406 F.3d 98, 109 (2nd Cir. 2005). As Plaintiffs recognize, however, *Nichols* is distinguishable because the Administrator there made no decision at all, and there was no decision to which the Court could defer. Additionally, decisions of the Court of Appeals for the Second Circuit are not binding upon this Court.

Plaintiffs also argue:

> The second reason why entitlement to deference must be tempered with a skeptical eye is because the reasons given by the Administrators and Trustees for the recision of the pensions awarded to the Plaintiffs are clearly false. The recisions were not based on the provisions of any misinformation. That is obviously the case because to the extent the Plan received any misinformation, that information, if true, would still not have supported an award of pensions or was so implausible as to defy belief.

Docket No. 103, p. 17.

The previous Report and Recommendation discussed Defendant's statements in writing

to both Plaintiffs that their employer had erroneously advised Defendant that Plaintiff Crawford had been an employee of LPT since October 27, 2003, and that LPT had erroneously advised Defendant that Plaintiff Shorette began employment with LPT on June 28, 2004, and that he worked 1,200 hours in the year ending on LPT's Contribution Date, July 1, 2004. Plaintiffs make no challenge to those facts.

As the undersigned has previously noted, the Trustees of the Defendant Plan are vested with discretion to determine eligibility for Plan benefits. Therefore, their decision denying a participant benefits will not be disturbed unless it is arbitrary and capricious. *See Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 111 (2008); *Wells v. United States Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1248 (6th Cir. 1991). As Defendants also correctly argue, Plaintiffs cite no authority for the proposition that the Trustees' determination as to a particular Plan provision must be expressly stated in their final decision in order to be entitled to deferential review.

## II. Counterclaims

Defendant has filed a Counterclaim against each Plaintiff seeking to recover the pension benefits that were erroneously paid to them. Docket No. 63, p. 8-10. Defendant seeks to recover $39,351 in pension benefits erroneously paid to Plaintiff Crawford, plus interest, and $41,112 in pension benefits erroneously paid to Plaintiff Shorette, plus interest. Defendant has submitted the Declaration of Maria Wieck, an Administrative Officer of Defendant, which establishes the amounts of the erroneous payments. Docket No. 97.

A number of Courts in the Sixth Circuit have awarded judgments to ERISA administrators seeking to recover overpaid benefits pursuant to 29 U.S.C. § 1132(a)(3)(B). *See*

*Gilcrest v. Unum Life Ins. Co. of Am.,* 255 Fed. Appx. 38 (6th Cir. 2007) (awarding fund the amount of the overpaid benefits); *McCandless v. Standard Ins. Co.,* 765 F. Supp. 2d 943, 959, (E.D. Mich. 2011) (defendant Insurance Company entitled to recover all overpaid benefits); *Smith v. Life Ins. Co. of North America*, 2011 WL 766071 at *9-10 (S.D. Ohio) (same).

Defendant argues that Article V, Section 5(b) grants the Trustees authority "to determine the amount of benefits, if any, an individual is entitled to under the Plan." Docket No. 54-1, p. 232. Additionally, Article V, Section 14(d) (entitled "Review of Claims") provides:

> The Board of Trustees, in the exercise of its discretion making benefit determinations under this Section, will apply the terms of the Plan and any applicable guidelines, rules and schedules, as may be adopted by the Board of Trustees from time to time and will periodically verify that benefit determinations are made in accordance with such documents. . . .

Docket No. 55-1, p. 237-38.

Pursuant to the referenced Section, the Board has adopted applicable guidelines or rules for overpayments, specifically, a "Policy for Collection of Overpayments." This Policy provides that the Trustees have:

> the legal right to exercise all remedies allowable under Trust Agreements, [ERISA], and other applicable law, including but not limited to: (1) the right to establish a date on which overpayments are due; (2) the right to recover interest; and (3) the right to take any other steps and to perform all other acts that are necessary in order to collect overpayments due the Fund in a timely and expeditious manner.

Docket No. 97, p. 4.

Furthermore, the Benefit Application Form that each Plaintiff filled out states:

> All information and statements in this Application are true and correct. I understand that a false statement may disqualify me from entitlement from pension benefits, and that the Trustees shall

9

> have the right to recover any payments made to me because of a false statement.

Docket No. 54-1, p. 48; Docket No. 55-1, p. 194.

Plaintiffs respond in part, "The ability to recover overpayments depends on the availability of equitable relief." Plaintiffs essentially argue that Defendant can recover the overpayments only if it asserts "a right to recover from a specific fund, the overpayments themselves, and specified a particular share of that fund." Docket No. 103, p. 23. Plaintiffs argue that none of the Plan language cited by Defendant distinguishes between "the Plaintiffs' general fund and any identifiable funds," nor does "the Plan specify how overpayments were to be calculated."

Defendant replies that, where an Agreement or Plan provides for recovery of overpayments, it necessarily asserts a right to recover from a specific fund distinct from general assets because the specific identifiable fund is the overpayments themselves. *See Sereboff v. Mid Atlantic Medical Services, Inc.,* 547 U.S. 356, (2006); *Gilcrest, supra,* 225 Fed. Appx. at 45-46.

Defendant also points out that, in addition to its ability to collect overpayments pursuant to the terms discussed above, the fund has a *duty* to do so. An ERISA fiduciary has "the power and corresponding duty to act in the interests of the plaintiff's beneficiaries, that is, to take necessary and appropriate action with respect to the required contributions and missing repayments." *Best v. Cyrus,* 310 F.3d 932, 935 (6th Cir. 2002).

With regard to Defendant's Counterclaims, the Court concludes that there is no genuine issue as to any material fact and that Defendant is entitled to a judgment as a matter of law.

### III. Recommendation

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 94) be GRANTED in its entirety. Specifically, Count 1 of Plaintiffs' Amended Complaint should be DISMISSED WITH PREJUDICE. Judgments should be entered on Defendant's Counterclaims against Plaintiff Robert Crawford in the amount of $39,351, plus interest thereon, and against Plaintiff Joseph Shorette in the amount of $41,112, plus interest thereon.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge